# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCILA PENA, | Case No.  1:19-cv-00780-AWI-SKO |
| Plaintiff, | FINDINGS AND RECOMMENDATION ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| ANDREW SAUL, | OBJECTIONS DUE:  14 DAYS |
| Commissioner of Social Security | (Doc. 1) |
| Defendant. | |
| _____/ | |

## I.     INTRODUCTION

On June 3, 2019, Plaintiff Lucila Pena ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.  For the reasons set forth below, it is respectfully RECOMMENDED that the Commissioner's decision be reversed, and the case remanded to the Commissioner for further proceedings.

## II.     FACTUAL BACKGROUND

On September 21, 2015, Plaintiff protectively filed an application for DIB payments alleging she became disabled on January 18, 2012 due to post-traumatic stress disorder ("PTSD"), severe anxiety, depression, and panic attacks.  (Administrative Record ("AR") 23, 160, 173, 279–80.)  Plaintiff subsequently amended her alleged onset date of disability to June 1, 2014.  (AR 127–28.)  Plaintiff was born on June 6, 1960, and was 53 years old as of the amended alleged onset date.  (*See* AR 31.)  Plaintiff did not graduate high school and stopped going to school when she moved to the United States at age 10, has past work experience as a janitor, and last worked full-time in approximately 2014.  (AR 31, 419, 518.)

### A.     Summary of Relevant Medical Evidence[1]

#### 1.     Kaiser Permanente

Plaintiff established care at Kaiser Permanente in approximately February 2012 for treatment of her mental impairments and continued treatment there through at least October 2014.  (AR 575–901.)  At her initial evaluation, the attending physician noted that Plaintiff referred herself for treatment of depression, panic attacks, anxiety, sleep disturbance, and work stress.  (AR 576.)  The attending physician noted that Plaintiff experienced sexual abuse by her father until she was 11 years old, verbal/emotional abuse at work, and had a myriad of mental impairment symptoms including "excessive worry, restlessness, muscle tension, hypervigilance and somatic complaints," "depression including depressed mood, anhedonia, crying spells, insomnia, irritability, agitation, decreased energy, guilt, hopelessness, decreased concentration," "shortness of breath, fear of losing control/going crazy, palpitations, dizziness, lightheadedness, shaking, chest pain, sweating, chills and nausea," and other symptoms.  (AR 577.)

On May 16, 2014, Plaintiff reported that a coworker had bullied and threatened her for about the previous four years, and Plaintiff believed the coworker was following her.  (AR 762.)  Plaintiff stated she feels uncontrollable anger at this situation and described an incident where she was

---

[1] As Plaintiff's assignments of error are limited to her mental impairments, the summary of the relevant medical evidence is limited to evidence related to Plaintiff's mental impairments.  This section includes only a summary of the relevant medical evidence in the record and does not contain every piece of relevant medical evidence that is in the record.  The parties also included summaries of the relevant medical evidence in their respective briefs.  (Doc. 13 at 4–15; Doc. 16 at 7–10.)

driving with her mother and pushed the gas pedal to the floor in anger.  (AR 763.)  Mental status examination showed that Plaintiff's behavior was tearful and fidgety; her speech was pressured, rapid, and rambling; mood was depressed and anxious; affect was restricted; and impulse control and insight were marginal.  (AR 765.)

On June 12, 2014, Plaintiff reported having homicidal thoughts about her coworker and feelings of extreme anger and rage, along with severe PTSD symptoms related to the sexual abuse she suffered from her father.  (AR 772.)  Plaintiff reported that a workers' compensation process related to her conflict with her coworker brought up feelings of humiliation and embarrassment about the sexual abuse because during the process she was questioned about it.  (*See* AR 772.)  Plaintiff's mental status examination was largely unchanged from the May 2014 appointment.  (*See* AR 773.)  Later that day, Plaintiff was admitted to St. Joseph's Behavioral Health for depression and suicidal ideation.  (AR 772–73; *see* AR 412–27.)  Plaintiff was kept for observation until June 16, 2014, and then discharged.  (*See* AR 412.)  The attending physician noted that Plaintiff "was admitted on an involuntary basis" because she had suicidal ideation and "[p]lans to cut her wrists, throat and chest or stab herself."  (AR 412, 415.)  Plaintiff benefitted from group therapy and medication and was discharged.  (*See* AR 412.)  On July 1, 2014, Plaintiff reported her symptoms had been worsening and she continued to have suicidal ideation.  (AR 809.)  Plaintiff was admitted to an intensive outpatient program on July 2, 2014, and discharged on August 8, 2014.  (AR 866.)  The program helped her deal with her depression, anxiety, and work stress, but she still had frequent, intense suicidal ideation, nightmares, and flashbacks.  (AR 866.)

**2.   Joseph Hernandez, Ph.D.**

On October 7, 2014, Plaintiff established care with psychologist Joseph Hernandez.  (AR 553.)  At Plaintiff's initial psychological assessment, Dr. Hernandez noted that Plaintiff suffered an "industrial injury" on January 18, 2012, "when [Plaintiff] participated in a meeting designed to end harassment by a coworker."  (AR 553.)  Dr. Hernandez noted that Plaintiff fell within the "severe" range of depressive and anxious symptoms upon examination and testing.  (AR 555.)  Dr. Hernandez noted that Plaintiff's "affective status has deteriorated over time due to what she considers a hostile work environment" and her "emotional state deteriorated to the point that she

required hospitalization due to being a danger to herself." (AR 555.)  Dr. Hernandez opined that Plaintiff met the diagnostic criteria for PTSD, as she "experiences recurrent and intrusive recollections of her trauma . . . has increased physiological arousal . . . and exhibits avoidance behaviors (unable to return to work)."  (AR 556.)  Dr. Hernandez opined that Plaintiff was not "currently able to return to work" and she would not be able to return to work until, at the earliest, January 1, 2015.  (AR 556.)

On November 3, 2015, Dr. Hernandez completed a "Short-Form Evaluation for Mental Disorders" on behalf of Plaintiff.  (AR 525–28.)  Dr. Hernandez noted that Plaintiff's grooming was disheveled; motor activity was retarded; speech was slow; interview behavior was cooperative; concentration was moderately impaired; memory was normal; intelligence was average; mood was anxious, depressed, and fearful; affect was blunted; associations were blocking; judgment was moderately impaired; and she exhibited obsessive thoughts and thoughts of being persecuted.  (AR 525–26.)  Dr. Hernandez noted that Plaintiff was "making progress" and had "improved affect," but she "continue[d] to fear return to work due to expectation of harm." (AR 527.)  Dr. Hernandez opined that Plaintiff had poor ability to understand, remember, and carry out complex instructions and complete a normal workday and workweek without interruptions from psychologically based symptoms; fair ability to understand, remember, and carry out simple instructions, maintain concentration, attention, and persistence, interact appropriately with supervisors and coworkers, and respond appropriately to changes in a work setting; and good ability to perform activities within a schedule and maintain regular attendance and interact appropriately with the public.  (AR 527.)

On March 1, 2016, Dr. Hernandez issued a final report regarding Plaintiff's psychological treatment. (AR 564–65.)  Dr. Hernandez noted Plaintiff had been seen for psychotherapy treatment for a total of 36 sessions in approximately 18 months.[2]  (AR 564.)  Dr. Hernandez stated that although Plaintiff had "made some progress in her affective condition . . . she is not entirely affectively stabilized."  (AR 564.)  Dr. Hernandez stated that Plaintiff "has good moments and

---

[2] Most of the 36 appointments Plaintiff attended were with other treatment professionals as described below.  (*See* AR 564.)

then reverts to severe anxiety symptoms" and "exhibits crying spells" but "is no longer considered to be a current suicide risk." (AR 564.) Dr. Hernandez noted that, despite these improvements, "there is a significant question about whether [Plaintiff] will be able to return to any work at all." (AR 565.) Dr. Hernandez again diagnosed Plaintiff with PTSD. (AR 565.)

### 3. Fair Oaks Psychiatric Associates

In January 2015, Plaintiff established care at Fair Oaks Psychiatric Associates, where she was treated by psychiatrists Janak Mehtani, M.D. and Stuart Tubis, M.D.[3] (*See* AR 517–20, 906–08.) On January 23, 2015, Dr. Mehtani noted that Plaintiff had "severe anxiety and panic attacks," and was becoming "increasingly more anxious, depressed, and despondent." (AR 518.) Dr. Mehtani opined that Plaintiff was "clinically depressed" and her depression was "directly and temporarily caused by the injury she sustained during the course of employment." (AR 519.) Dr. Mehtani stated that Plaintiff was a "victim of severe emotional mistreatment and harassment at her workplace," and she "truly felt that her life was in danger by this janitor co-worker who threatened her." (AR 519.) Dr. Mehtani opined that "at this time, [Plaintiff] is totally disabled" and "needs ongoing psychiatric care and treatment to alleviate the effects of the industrial injury." (AR 519.) Dr. Mehtani started Plaintiff on medications for her anxiety, panic attacks and agitation, including Brintellix, Vistaril, Remeron, and trazadone. (AR 519.)

On November 3, 2016, Dr. Tubis opined that Plaintiff remained "totally disabled from seeking gainful employment." (AR 906.) Dr. Tubis stated that Plaintiff had not yet improved with her prescribed medication and had actually gotten worse, and that her medications would be adjusted to hopefully improve her depression and anxiety. (AR 906.) Dr. Tubis noted Plaintiff was still feeling depressed, lacked energy and focus, was not motivated, was not happy, and stayed at home because she was fearful she would be attacked again. (AR 906.) Dr. Tubis also opined that Plaintiff was "totally disabled from seeking gainful employment" for similar reasons on multiple previous occasions including on September 29, 2016, June 27, 2016, April 27, 2016, March 1, 2016, February 1, 2016, and December 22, 2015. (AR 907, 909–913.)

---

[3] Although the treatment letters appear to have been written by Antonio Luza, PA-C, they are signed by both Mr. Luza and Dr. Tubis, his "Supervising Psychiatrist," and the letters imply both professionals treated Plaintiff. (*See, e.g.,* AR 906.) Thus, in the summary of the medical evidence Dr. Tubis is referred to as the treating professional.

1

### 4. Martin Shaffer, Ph.D.

Plaintiff saw psychologist Martin Shaffer on a number of occasions in connection with her worker's compensation claim. (*See* AR 444–98.) On July 15, 2015, during Dr. Shaffer's evaluation of Plaintiff, Plaintiff reported that she left work in June 2014, because she was "very worn out" and she wanted to quit living. (AR 447.) Dr. Shaffer noted that Plaintiff exhibited obsessive thoughts about her safety and the threat posed by her abusive coworker, and about her childhood and the sexual abuse she suffered from her father. (AR 448.) Dr. Shaffer stated that Plaintiff was afraid to leave the house because she is afraid the coworker might attack her. (AR 492.) Plaintiff stated that she became suicidal and required hospitalization as a result of the deposition she had to attend where she was asked questions about her history of sexual abuse with her father. (AR 448.) Plaintiff reported that she had panic attacks at night and she has significant sleep disturbance. (AR 448.) Plaintiff stated that aside from contact with immediate family, she has no relationships with others and has no friends. (AR 463.)

Dr. Shaffer diagnosed Plaintiff with major depression, PTSD, generalized anxiety disorder, and occupational problems. (AR 490.) Dr. Shaffer opined Plaintiff has ongoing symptoms of moderate to severe depression, moderate to severe anxiety with panic attacks, suicidal thoughts, generalized anxiety, severe sleep disturbance, moderate to severe social withdrawal, and diminished self-esteem. (AR 491.) Dr. Shaffer opined that Plaintiff had been totally disabled since early June 2014 due to her PTSD. (AR 494–95.)

### 5. State Agency Physicians

On December 28, 2015, A. Garcia, M.D., a Disability Determinations Service medical consultant, assessed the severity of Plaintiff's mental impairments and Plaintiff's mental RFC. (AR 163–67.) Dr. Garcia opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, and had no significant limitation in any other functional area. (AR 166–67.)

Upon reconsideration, on April 22, 2016, another Disability Determinations Service medical consultant, E. Aquino-Caro, M.D., affirmed Dr. Garcia's findings. (AR 180–81.)

6

**6.** **Third-Party Function Report (Lay Witness Testimony)**

On November 1, 2015, Plaintiff's son, Giovanni Maya, submitted a third-party function report on behalf of Plaintiff setting forth his lay witness testimony regarding Plaintiff's impairments. (AR 330–37.) Mr. Maya stated that he visits Plaintiff two or three times per month and that Plaintiff has "poor concentration, gets anxious in a social setting, and socially inhibited . . . poor sleep pattern, at times drowsy or insomniac, related to medication side effects." (AR 330.) Mr. Maya stated that Plaintiff rarely goes out of the house alone, and mostly stays home. (AR 333–34.) Mr. Maya stated Plaintiff has impaired functioning related to memory, completing tasks, concentration, understanding, following instructions, and getting along with others, and that she is socially anxious and requires "thorough explanation" of anything Mr. Maya tells her in conversation. (AR 335.) Mr. Maya stated Plaintiff requires repetition of instructions and is easily frustrated with a poor attention span. (AR 335.) Plaintiff handles stress poorly and gets extremely anxious and overwhelmed and has panic attacks. (AR 336.) Mr. Maya stated Plaintiff has increased paranoia and believes people are going to break in her house and that people are watching her when she leaves the house. (AR 336.)

**B.** **Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on December 29, 2015, and again on reconsideration. (AR 185–89, 195–99.) On June 3, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 201.)

On August 9, 2017, Plaintiff appeared with counsel and testified as to her alleged disabling conditions before an ALJ with the help of a Spanish interpreter. (AR 125–59.) Plaintiff testified she stopped working in 2014 because she was "totally very sick" from "the stress" she was going through at work. (AR 130.) Plaintiff stated that her anxiety and depression started in approximately 2008 when a coworker began threatening and verbally abusing her. (AR 131.) Plaintiff testified that she worked with this coworker for about three years, but that experience stuck with her and caused her to develop anxiety and depression at work. (AR 132.) Plaintiff stated that now, she does not "want to be around people" and "[e]verything reminds [her] of what [she] went through, and it's not nice." (AR 133.) She stated she has panic attacks at least twice

1   a day and she gets chest pain and has difficulty breathing.  (AR 134.)  Plaintiff stated she does

2   some household chores like laundry, cleaning, and cooking.  (AR 138.)  Plaintiff stated she

3   eventually filed for worker's compensation.  (*See* AR 142.)  Plaintiff testified she takes

4   medications for her panic disorder, depression, sleep issues, and anxiety.  (AR 147–48.)

5          A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a janitor,

6   Dictionary of Occupational Titles (DOT) code 381.687-018, which was medium work with a

7   specific vocational preparation (SVP)[4] of 2.  (AR 151.)  The ALJ asked the VE to consider a person

8   of Plaintiff's age, education, and with her work background.  (AR 152.)  The VE was also to

9   assume this person had a "marginal education," could communicate in English but her primary

10  language was Spanish, could work at all exertional levels, but was limited to understanding,

11  remembering and carrying out simple routine repetitive tasks using judgment limited to simple

12  work-related decisions and was capable of socially interacting with supervisors, coworkers and the

13  public occasionally.  (AR 152.)  The VE testified that such a person could perform the job of

14  agriculture packer, DOT code 920.687-134- which is medium work with a SVP of 2 and 277,000

15  jobs available in the national economy; kitchen helper, DOT code 318.687-010, which is medium

16  work with a SVP of 2 and 206,000 jobs available; and auto detailer, which is medium work with

17  a SVP of 2 and 203,000 jobs available.  (AR 153.)

18         In a second hypothetical, the ALJ asked the VE to consider an individual with the

19  limitations described in the first hypothetical, except that the person would be off task at least

20  twenty percent of the time and miss two days of work per month.  (AR 153.)  The VE testified that

21  such a person could not perform any work.  (AR 153.)

22  **C.     The ALJ's Decision**

23         In a decision dated March 14, 2018, the ALJ found that Plaintiff was not disabled, as

24  defined by the Act.  (AR 23–32.)  The ALJ conducted the five-step disability analysis set forth in

25  20 C.F.R. § 404.1520.  (AR 25–32.)  The ALJ decided that Plaintiff had not engaged in substantial

26

27  [4] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).

28  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id.*

8

gainful activity since June 1, 2014, the alleged onset date (step one).  (AR 26.)  At step two, the ALJ found that Plaintiff had the following severe impairments: PTSD; depressive disorder; and generalized anxiety disorder.  (AR 26.)  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three).  (AR 26.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff retained the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations.  [Plaintiff] is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks.  She is limited to using judgment with simple work-related decisions.  She is limited to occasional interaction with supervisors, coworkers, and the public.

(AR 28.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]"  (AR 29.)  At step five, the ALJ found that Plaintiff could not perform her past relevant work, but that she could perform the jobs of agriculture packer, kitchen helper, and auto detailer.  (AR 31–32.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 5, 2019.  (AR 2–4.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV.   DISCUSSION

Plaintiff contends that the ALJ: (1) improperly rejected the opinions of the treating and examining doctors; (2) improperly rejected Plaintiff's testimony; (3) improperly rejected the lay witness testimony of Mr. Maya; (4) erred in his formulation of the RFC; and (5) erred in determining that Plaintiff could perform other work at step five. (*See* Doc. 13 at 15–28.)  For the reasons stated below, the Court agrees with Plaintiff that the ALJ committed reversible error in his evaluation of the medical opinion evidence, Plaintiff's testimony, and the lay witness testimony of Mr. Maya, which resulted in a legally deficient RFC formulation and step five determination.

### A.   The ALJ Erred in His Evaluation of the Medical Opinion Evidence

#### 1.   Legal Standard

The ALJ must consider and evaluate every medical opinion of record.  *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018).  In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason."  *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician).  *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)).  The opinions of treating

physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.  The opinion of a

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  *Lester*, 81 F.3d at 831.

### 2.    Analysis

#### a.    Dr. Hernandez's Opinion

Plaintiff alleges—and the record reflects—that Dr. Hernandez was Plaintiff's treating psychologist. "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2);  *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)).  "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'"  *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given."  *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion; (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion."  20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc.*

*Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion).  "The ALJ must do more than offer his conclusions."  *Reddick*, 157 F.3d at 725.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.*  (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Dr. Hernandez treated Plaintiff on a few occasions from approximately October 2014 through at least March 2016.  (*See* AR 553, 564.)  As stated above, on November 3, 2015, Dr. Hernandez completed a "Short-Form Evaluation for Mental Disorders" on behalf of Plaintiff.  (AR 525–28.)  Dr. Hernandez's evaluation stated that Plaintiff had poor or fair ability in most functional areas and could not return to work.  (*See* AR 527.)

In weighing Dr. Hernandez's opinion, the ALJ stated:

> The undersigned accords partial but lesser weight to the opinion of Dr. Hernandez because the doctor's opinion is partially supported by the medical record, including his own treatment notes.  However, the doctor's opinion is not adopted because the doctor's treatment notes are repetitive, remain essentially unchanged from appointment to appointment, and do not provide ongoing mental status examinations of [Plaintiff].

(AR 29.)

Although not explicitly stated by the ALJ, portions of Dr. Hernandez's opinion were

inconsistent with the opinions of the state agency physicians.  (*Compare* AR 525–28 *with* AR 166–67, 180–81.)  Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting any portion of Dr. Hernandez's opinion.  *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

The Court finds the ALJ failed to offer "specific and legitimate" reasons for rejecting portions of Dr. Hernandez's opinion.  First, the ALJ did not specify which portion of Dr. Hernandez's opinion he finds to be "supported by the medical record" and which portion he finds to be unsupported by the medical record.  Thus, the Court cannot find that the ALJ has offered "specific and legitimate" reasons for rejecting a portion of his opinion where the ALJ does not even state what portion of the opinion he is rejecting.

Second, the ALJ's only reasons for rejecting an unspecified portion of Dr. Hernandez's opinion are that his treatment notes are "repetitive" and "largely unchanged" from appointment-to-appointment, and do not provide "ongoing mental status examinations."   (*See* AR 29.) However, Dr. Hernandez only saw Plaintiff on a few occasions,[6] (*see* AR 564); thus the Court does not find any repetition in Dr. Hernandez's notes to be a specific and legitimate reason for rejecting his opinion, *see, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001).  There is also no requirement that a psychologist provide ongoing mental status examinations in additional to clinical evaluations and observations.  Finally, the ALJ does not specify what portion of the treatment notes he finds repetitive, and does not specify why, if the repetition of the notes make Dr. Hernandez's opinion unreliable, the ALJ nonetheless accorded "partial but lesser" weight to the opinion.  *See Reddick*, 157 F.3d at 722–23.  Thus, the Court finds the ALJ failed to offer any specific or legitimate reason for rejecting Dr. Hernandez's opinion.

---

[6] The ALJ did not cite the length of the treating relationship as a reason for discounting Dr. Hernandez's opinion.

### b.    Workers' Compensation Physicians

Drs. Mehtani, Tubis, and Shaffer ("the workers' compensation physicians") examined Plaintiff in connection with her workers' compensation process.  (*See* AR 444–98, 517–20, 906–08.)  All three doctors opined that Plaintiff was unable to work and that Plaintiff suffered from various debilitating psychological symptoms.  (*See, e.g.,* AR 490, 519, 906.)  In weighing these three opinions, the ALJ stated:

> These opinions are given no weight because they are based upon workers compensation regulations and they are not relevant to a finding of disability on the basis of social security regulations.  The opinions are also not based on a functional assessment and do not provide any functional limitations.  Furthermore, the opinions are on an issue reserved to the Commissioner of Social Security; are conclusory; and are not supported by signs, laboratory findings, or an explanation.

(AR 30.)  Because the workers' compensation physicians' opinions were partially contradicted by the state agency physicians' opinions, (*compare* AR 444–98, 517–20, 906–08), the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for totally rejecting the opinions.  *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1998); *see also Lester*, 81 F.3d at 830.

The Court finds the ALJ failed to offer "specific and legitimate" reasons for rejecting the opinions of the workers' compensation physicians.  The ALJ did not address the opinions individually, but instead addressed them as a group, and did not make specific findings as to any of them.  (*See* AR 30.)  Further, contrary to the ALJ's statement, the workers' compensation physicians did not indicate that they based their opinions or observations on "workers compensation regulations" and instead simply made findings related to Plaintiff's psychological symptoms.  (*See* AR 30.)  Also, the ALJ may not reject examining physicians' opinions simply because they were originally given in the context of a workers' compensation proceeding.  *See Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. Jan. 22, 2002) ("[T]he ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers'

compensation proceeding, or because it is couched in the terminology used in such proceedings.")
(citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984)).

There is also no requirement that physicians' opinions provide specific functional limitations, *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012), and contrary to the ALJ's opinion, the workers' compensation physicians' opinions were not conclusory but were instead based on extensive clinical observations and explanation as to Plaintiff's symptoms and limitations.  (*See* AR 444–98, 517–20, 906–08.)  Finally, although the opinion of ultimate disability is an issue reserved for the Commissioner, the ALJ must still evaluate physicians' opinions regarding Plaintiff's functional ability and whether she can perform various work-related functions.  *See, e.g., Mora*, 2018 WL 636923, at \*10.

**B.  The ALJ Erred in His Evaluation of Plaintiff's Testimony and the Lay Witness Testimony of Mr. Maya**

**1.  The ALJ's Evaluation of Plaintiff's Testimony**

**a.  Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

The ALJ may consider many factors in weighing a claimant's credibility, including

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet" and it "is the most demanding [standard] required in Social Security cases." *Garrison*, 759 F.3d at 1015 (citation omitted). "General findings are insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see, e.g., Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

### b. Analysis

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 29.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 29.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for his adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ gave only one specific reason as to why Plaintiff's symptom statements were less than credible: they were inconsistent with the objective medical evidence.  (AR 29.)  The Court finds this is not a specific, clear and convincing reason to discount Plaintiff's testimony because the ALJ may not reject a claimant's subjective statements for the sole reason that the testimony is inconsistent with the objective evidence.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015).  Further, the ALJ failed to even specify which statements he found to be less than credible and why.  This is required of the ALJ because, without that specification, the Court is left to speculate as to which statements the ALJ intended to discount and how they are undermined by the evidence, which the Court may not do.  *See id.* at 494–95 ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [the claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").

### 2.     The ALJ's Evaluation of the Lay Witness Testimony

#### a.     Legal Standard

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must consider, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  *Lewis*, 236 F.3d at 511; *Stout*, 454 F.3d at 1053; *see also* 20 C.F.R. §§ 404.1527(f).  In rejecting lay witness testimony, the ALJ need only provide "arguably germane reasons" for dismissing the testimony, even if she does "not clearly link [her] determination to those reasons."  *Lewis*, 236 F.3d at 512.  An ALJ may reject lay witness testimony if it is inconsistent with the record.  *See, e.g., id.* at 511–12 (rejecting lay witness testimony conflicting with the plaintiff's testimony and the medical record); *Bayliss*, 427 F.3d at 1218 (rejecting lay witness testimony conflicting with the medical record).  The ALJ may "draw inferences logically flowing from the evidence."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Further, "[i]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114.

**b.      Analysis**

Plaintiff's son, Giovanni Maya, submitted a third-party function report on behalf of Plaintiff, which stated in part that Plaintiff has impaired functioning related to memory, completing tasks, concentration, understanding, following instructions, and getting along with others, and that she is socially anxious and requires "thorough explanation" of anything Mr. Maya tells her in conversation.  (*See* AR 330–37.)  In evaluating Mr. Maya's statements, the ALJ stated:

> Giovanni Maya, [Plaintiff's] son, filled out a Third Party Function Report about [Plaintiff] on November 1, 2015.   Mr. Maya noted that [Plaintiff] had poor concentration, acted anxious in social settings, and was socially inhibited.   He indicated that she had poor sleep patterns and was drowsy at times due to medication side effects.   He primarily corroborated the statements of [Plaintiff].   The undersigned finds the statements of Mr. Maya to be generally persuasive except in regards to the severity of [Plaintiff's] impairments, as the medical evidence does not support such severe limitations.

(AR 29.)

The Court finds the ALJ failed to offer sufficiently "germane" reason for partially rejecting Mr. Maya's statements because the ALJ may not offer inconsistency with the objective medical evidence as the sole reason for rejecting a lay witness report.  *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017); *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Further, the ALJ does not specify which statements she finds to be credible and "generally persuasive" and which statements she finds to be less than credible.  Specifically, the ALJ states that all of Mr. Maya's statements are persuasive except those regarding "the severity of [Plaintiff's] impairments," but Mr. Maya's entire report Mr. Maya addresses the severity of Plaintiff's impairments.  (*See* AR 330–37.)  Thus, without further specification the Court cannot find that the ALJ offered sufficiently germane reasons for rejecting the lay witness testimony of Mr. Maya.

**C.      As a Result of the Above Errors, the ALJ's RFC Determination and Step Five Findings Were Unsupported by Substantial Evidence**

**1.      Legal Standards**

**a.      RFC Assessment**

An RFC assessment is an "administrative finding" that is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(2).  The RFC is "the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").  In formulating an RFC, the ALJ weighs medical and other source opinions, including lay opinions, as well as the claimant's credibility. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  The RFC assessment must be supported by substantial evidence, and "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8p).

**b.      Step Five Determination**

"[I]f a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial work."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  At step five, "the ALJ . . . examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy."  *Id.*  "If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do."  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a [VE] or (2) by reference to the Medical-Vocational Guidelines . . ."  *Id.*  "If the Commissioner meets this burden, the claimant is not disabled and therefore not entitled to . . . benefits."  *Id.* (citation omitted).  "If the Commissioner cannot meet this burden, then the claimant is disabled and therefore entitled to . . . benefits."  *Id.* (citation omitted).

**2.      Analysis**

Here, the Court finds that the ALJ's RFC determination and step five determination are unsupported by substantial evidence because both determinations were based upon the ALJ's erroneous evaluation of the medical opinion evidence, Plaintiff's testimony, and the lay witness testimony.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014); *Lingenfelter*, 504 F.3d at 1040–41 ("Because the ALJ did not provide clear and convincing reasons for excluding Lingenfelter's pain and symptoms from his assessment of Lingenfelter's RFC, substantial evidence does not support the assessment . . . Nor does substantial evidence support the ALJ's step-five determination, since it was based on this erroneous RFC assessment.").

Specifically, if the ALJ had credited the opinions of any of the four physicians mentioned above, Plaintiff's testimony, or Mr. Maya's testimony, the ALJ may have included additional psychological limitations in the RFC.  These limitations may include, for example, a further limitation related to interaction with others, or a limitation related to Plaintiff's allegedly debilitating panic attacks.  If the RFC included those additional limitations, that may have changed the ALJ's step five determination.  On remand, the ALJ should reevaluate the opinion evidence and testimony as set forth above, and reevaluate Plaintiff's RFC and whether Plaintiff can perform her past relevant work or other work at steps four and five.

**D.      The ALJ's Errors Were Not Harmless**

The Court now turns to the determination of whether these errors by the ALJ were harmless.  The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record).  As such, "the court will not reverse an ALJ's decision for harmless error."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of*

1    *Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if

2    the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less

3    than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497

4    (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether

5    the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the]

6    application" of the "harmless error analysis to social security cases" is "fact-intensive—'no

7    presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the

8    case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121).

9    "[T]he burden of showing that an error is harmful normally falls upon the party attacking the

10   agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

11         Here, the Commissioner does not contend that any potential error by the ALJ raised by

12   Plaintiff is harmless except for the purported error in evaluating Plaintiff's credibility.  (*See* Doc.

13   16 at 18.)  The Court agrees with Plaintiff that if the ALJ had credited certain statements from

14   Plaintiff, Mr. Maya, or the four physicians that the ALJ rejected, that may have changed the

15   disability determination.  This is especially true here, where Plaintiff and Mr. Maya alleged fairly

16   significant limitations, including that Plaintiff could barely ever leave the house, had debilitating

17   panic attacks twice a day, and could almost never be around others because it would produce

18   intense anxiety, and all four physicians opined that Plaintiff had significant limitations that

19   rendered her unable to work.  Thus, the error was not "inconsequential to the ultimate nondisability

20   determination," *see Molina*, 674 F.3d at 1115, and was not harmless.

21   **E.    The ALJ's Errors Warrant Remand for Further Proceedings**

22         Plaintiff contends that if the ALJ's decision is reversed, the Court should remand the case

23   for an immediate award of benefits.  (Doc. 13 at 28.)  The Court disagrees and recommends the

24   case be remanded to the Commissioner to allow the ALJ to re-assess Plaintiff's testimony, Mr.

25   Maya's statements, and the four physicians' opinions, incorporate any necessary additional

26   limitations in the RFC, and reevaluate the steps four and five determinations based on the new

27   RFC.

28

1   Where the ALJ commits an error and that error is not harmless, the "ordinary … rule" is "to

2   remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099

3   (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where

4   courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations

5   omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-

6   as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the

7   court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are

8   outstanding issues that must be resolved before a determination of disability can be made;" and

9   (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the

10  last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not

11  been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of

12  further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations

13  omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply

14  to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

15
16  Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is

17  inapplicable because additional administrative proceedings would be useful. If the ALJ changes

18  his evaluation of Plaintiff's subjective complaints, Mr. Maya's statements, and/or the four

19  physicians' opinions, he could incorporate any warranted additional limitations in the RFC.

20  Conversely, there may be specific, clear and convincing reasons the ALJ can offer for discounting

21  Plaintiff's testimony, germane reasons the ALJ may offer for rejecting Mr. Maya's testimony, and

22  specific and legitimate reasons the ALJ can offer for rejecting portions of the four physicians'

23  opinions. *See, e.g., Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016); *Voisard v. Berryhill*,

24  No. 2:17-CV-1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed

25  to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does

26  not compel a finding that he is unable to do so"); *Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1010

27
28

(E.D. Cal. Mar. 17, 2017) (remanding case for further proceedings where the ALJ erred in her evaluation of the medical opinions of the plaintiff's treating physicians, "for the ALJ to properly consider and discuss the treating physicians' opinions," direct any "further medical evaluation . . . necessary," and re-formulate the plaintiff's RFC).  Even if the ALJ decides to credit as true some or all of the above testimony and opinion evidence and adjust the RFC determination, the ALJ may still conclude that Plaintiff is not disabled—either because she has the RFC to perform the requirements of her past relevant work or because she has the RFC to perform the requirements of other work that exists in significant numbers in the national economy.

The ALJ may also elect to further develop the record, if deemed necessary.  *See, e.g., Vaughn*, 242 F. Supp. 3d at 1010 ("Any subsequent decision shall discuss what weight is assigned to each physician's opinion, the reasons for making such a determination, and why substantial evidence supports that conclusion.").  Further proceedings would therefore be useful to allow the ALJ to resolve these "outstanding issues" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).  On remand, the ALJ should reevaluate Plaintiff's symptom testimony, Mr. Maya's testimony, and the medical opinion evidence, address any necessary changes to the RFC determination, and reevaluate the steps four and five determinations based on the new RFC.

## V.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Court RECOMMENDS that the ALJ's decision be REVERSED and the case REMANDED to the Commissioner of Social Security for further proceedings, and that judgment be entered in favor of Plaintiff Lucila Pena and against Defendant.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings

and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **July 8, 2020**                                    /s/ *Sheila K. Oberto*
                                                            UNITED STATES MAGISTRATE JUDGE